IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON O'CONNOR, | No. 4:23-CV-01117 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| PROGRESSIVE ADVANCED INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM OPINION**

**OCTOBER 1, 2024**

## I. BACKGROUND

In June 2023, Plaintiff Jason O'Connor filed a complaint against Defendant Progressive Advanced Insurance Company ("Progressive") in the Court of Common Pleas of Northumberland County.[1] Progressive removed the case to this Court and filed an Answer in July 2023.[2] In September 2023, this Court issued a Scheduling Order. Under this Order, discovery was due by May 1, 2024, dispositive motions were due by July 1, 2024, Plaintiff's Expert Report was due by October 1, 2024, Defendant's Expert Report was due by November 1, 2024, and

---

[1] Exhibit A – County Complaint, Doc. 1-1.
[2] Notice of Removal, Doc. 1; Answer, Doc. 2.

Expert Discovery was due by November 30, 2024.[3] Now pending is Progressive's motion for summary judgment.[4] For the reasons stated below, it is denied.

## II. DISCUSSION

### A. Jurisdiction

In August 2024, this Court issued a Memorandum Opinion and Order, *sua sponte* requesting supplemental briefing on whether it had subject matter jurisdiction over this case.[5] The Supreme Court of the United States has warned that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."[6] And O'Connor had only sought $6,067.00 in damages, along with a request for punitive damages, for breach of contract.[7]

Having reviewed Progressive's prompt and thorough response,[8] the Court is satisfied that exercising jurisdiction is appropriate. As the relevant cause of action for bad faith insurance claims permits the Court to award "attorney fees against the insurer,"[9] those fees are included as part of O'Connor's compensatory damages both for purposes of calculating the ratio between compensatory and punitive

---

[3] *Id.*
[4] Motion for Summary Judgment, Doc. 10.
[5] Memorandum Opinion and Order, Doc. 18.
[6] *Id.* at 3 n.18 (quoting *State Farm Mut. Auto. Ins. Co. v. Campell*, 538 U.S. 408, 424–25 (2003)).
[7] *Id.* at 3.
[8] Supplemental Brief, Doc. 19.
[9] 42 Pa.C.S. § 8371(3).

damages[10] and for calculating the amount-in-controversy itself.[11] The amount in controversy requirement is therefore satisfied.

B.  **Standard of Review**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[13] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[14] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[15]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[16] the Court "must view the facts and evidence presented on the motion in the light most favorable to the

---

[10]  *Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224, 235–37 (3d Cir. 2005).
[11]  *See Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) ("attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action.").
[12]  Fed. R. Civ. P. 56(a).
[13]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[14]  *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).
[15]  *Id*.
[16]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

nonmoving party."[17] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[18] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[19]

A party may move for summary judgment "at any time" before the close of discovery.[20] But while "somewhat early" motions for summary judgment are "permissible,"[21] and summary judgment motions before the close of discovery are "not premature per se,"[22] "[d]istrict courts are rarely justified in granting summary judgment if discovery is incomplete, unless the outstanding discovery pertains to immaterial facts."[23] "Where discovery relevant to a particular issue has not yet been completed, a summary judgment motion on that issue is premature."[24]

Therefore, resolving summary judgment motions after the completion of fact discovery, but before the completion of expert discovery, may be appropriate

---

[17] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[18] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018).
[19] Fed. R. Civ. P. 56(c)(3).
[20] Fed. R. Civ. P. 56(b).
[21] *Zerbe v. Karnes*, No. 4:07-CV-413, 2008 U.S. Dist. LEXIS 5551, at *12 n.6 (M.D. Pa. Jan. 25, 2008)
[22] *Grandizio v. Smith*, Civil No. 14-3868, 2015 U.S. Dist. LEXIS 133(RBK)(KMW), at *7 (D.N.J. Jan. 5, 2015) (citing *Childers v. Joseph*, 842 F.2d 689, 693 n.3 (3d Cir. 1988)).
[23] *Ahn v. Cigna Health & Life Ins. Co.*, Civ. No. 19-07141 (KM)(JBC), 2019 U.S. Dist. LEXIS 181533, at *7 (D.N.J. Oct. 21, 2019) (citing *O'Toole v. Tofutti Brands, Inc.*, 202 F.Supp. 3d 458, 464 (D.N.J. 2016)).
[24] *Metro Container Grp. v. AC&T Co.*, Civil Action No. 18-3623, 2023 U.S. Dist. LEXIS 65898, at *3–4 (E.D. Pa. Apr. 14, 2023) (citing *Sames v. Gable*, 732 F.2d 49, 51–52 (3d Cir. 1984)).

where it does not "deprive either party of the opportunity to point to evidence relevant to the decision of the summary judgment motion."[25] On the other hand, summary judgment before the deadline for expert reports is premature where the resolution of issues relies upon expert reports.[26]

### C. Undisputed Facts

This is a breach of contract and insurance bad faith[27] dispute between O'Connor and his insurance carrier, Progressive.

Progressive's insurance policy (the "Policy") coverage applies to losses "not caused by collision," including "fire."[28] But the Policy excludes from this coverage any losses "due and confined to wear and tear" and "mechanical, electrical or electronic breakdown or failure."[29] Even where a loss is covered, the Policy only reaches losses sustained after a $1,000 deductible is reached.[30]

After O'Connor's car spontaneously caught fire in his garage, Progressive's claims adjustor concluded that the fire was caused by corrosion on the main ground

---

[25] *Sun Pharm. Indus. Ltd. v. Daptalis Pharm., LLC*, Civil Action No. 18-648-WCB, 2019 U.S. Dist. LEXIS 102961, at *25 (D. Del. Jun. 10, 2019).
[26] *Williams v. Kort*, Civil No. 1:CV-02-2320, 2023 U.S. Dist. LEXIS 37624, at *4–6 (M.D. Pa. Dec. 8, 2005).
[27] *See* 42 Pa.C.S. § 8371.
[28] Policy, Doc. 12-1 at 26.
[29] Progressive's Statement of Undisputed Material Facts ("SUMF"), Doc. 12 ¶4; O'Connor's Answer to Defendant's Statement of Undisputed Material Facts ("ASUMF"), Doc. 14 ¶5; Policy, Doc. 12-1 at 29.
[30] SUMF, Doc. 12 ¶3; ASUMF, Doc. 14 ¶3.

wire, induced by "normal wear and tear."[31] He estimated $633.31 in damages to the car.[32] O'Connor states in a denial that according to his mechanic, who witnessed a subsequent examination, Progressive's adjustor only "glanced" at the car rather than performing an adequate inspection.[33] Nevertheless, O'Connor agrees in his brief in opposition that "the vehicle fire in question was due to a mechanical failure."[34]

### D. Analysis

Count 1 of O'Connor's complaint alleges a breach of contract claim, while Count II alleges an insurance bad faith claim.[35] "[T]hree elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) the resultant damages."[36] Under Pennsylvania's bad faith insurance statute, the court may award interest on the amount of an insurance claim, punitive damages, court costs, and

---

[31] SUMF, Doc. 12 ¶¶20, 23; ASUMF, Doc. 14 ¶¶20, 23; Exhibit C (Claim Notes), Doc. 12-3 at 11–12; Exhibit F (February 20, 2023 Letter), Doc. 12-6.
[32] SUMF ¶¶13–14; ASUMF ¶¶13–14; Exhibit C (Claim Notes), Doc. 12-3 at 10. O'Connor also received an invoice for $66.79 when he took his car to Central Penn Automotive for a diagnostic test. SUMF ¶34; ASUMF ¶34.
[33] ASUMF ¶19. Neither this denial nor the complaint creates an issue of fact for purposes of summary judgment. *See Webb v. Columbia Cnty.*, No. 4:22-CV-00292, 2023 U.S. Dist. LEXIS 230328, at *4–7 (M.D. Pa. Dec. 27, 2023). Though this denial is not material to any arguments raised in the pending motion, I include the denial here statement of facts to contextualize O'Connor's bad faith claim.
[34] Brief in Opposition, Doc. 16 at 4.
[35] Exhibit A—County Complaint, Doc. 1-1 at 4–5.
[36] *412 N. Front St. Assoc. v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 657 (Pa. Super. Ct. 2016) (quoting *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)).

attorneys fees against the insurer if it finds that the insurer has acted in bad faith towards the insured in an action arising under an insurance policy.[37]

Progressive argues that the damage does not exceed the Policy's $1,000 deductible because O'Connor has not put forward any facts showing more than $1,000 in damage. Next, it argues that because a mechanical breakdown caused the fire, the fire damage was "due and confined to" mechanical failure and excluded by the Policy. Finally, Progressive seeks dismissal of the bad faith insurance claim as there is no duty to provide coverage where no coverage is due, and alternatively because the denial of coverage was reasonable. I deny the motion in full.

1. **Amount of Damage to the Car**

The first issue relates to whether the damage to O'Connor's vehicle exceeds Policy's $1,000 deductible. Progressive argues that the only evidence of damage to O'Connor's vehicle is provided in its claims adjustor's report, which opined that the vehicle sustained $633.31 in damages;[38] hence, there is no genuine dispute that there is less than $1,000 in damage to the vehicle.[39] O'Connor states in his brief in opposition that "the Defendant's argument regarding the ensuing damages amount is premature, in that Defendant has yet to be provided with Plaintiff's expert report,

---

[37] 42 Pa.C.S. § 8371.
[38] Progressive also notes the damage of $66.78 to O'Connor's vehicle provided in discovery. Brief in Support, Doc. 11 at 5.
[39] *Id.* at 5.

which is expected to speak to the cause of the fire and the resultant total loss of the vehicle, in addition to the value of the vehicle lost."[40]

In its reply brief, Progressive acknowledges that the deadline for expert reports has not yet passed, and so does not object to deferring a ruling on the breach of contract claim until after the parties have exchanged expert reports.[41] I agree. Because O'Connor's expert report could create a genuine issue on this material fact, granting summary judgment on this issue would be premature. If it so desires, Progressive will be permitted to move for summary judgment again after expert discovery concludes.

### 2. Coverage for Fire Caused by Mechanical Breakdown

Progressive next argues that it is undisputed that the fire was caused by a mechanical, electric, or electronic breakdown or failure, and therefore, any resulting damage should be excluded under the Policy.[42] O'Connor responds by arguing that the Policy explicitly covers damage caused by "fire," even if a non-covered cause of damage initiates the fire.[43] The issue is therefore whether the Policy's exclusion of "loss . . . to any vehicle that is due and confined to . . . mechanical, electrical or electronic breakdown or failure" excludes fires caused by a mechanical failure. As fact discovery has concluded, and this is an issue of

---

[40] Brief in Opposition, Doc. 16 at 4.
[41] Reply Brief, Doc. 17 at 3 n.1.
[42] *Id.* at 2.
[43] Brief in Opposition, Doc. 16 at 4.

8

contract interpretation which is unaffected by any testimony from the parties' expert witnesses, it is not premature to rule upon it.

Part IV of the Policy states that Progressive "will pay for sudden, direct and accidental loss . . . that is not caused by collision."[44] "A loss not caused by collision includes . . . fire."[45] The Policy then sets out exclusions which are not covered, notwithstanding this earlier section of Part IV.[46] "Coverage under this Part IV will not apply for loss . . . to any vehicle that is due and confined to . . . mechanical, electrical or electronic breakdown or failure."[47] "[M]echanical breakdown" includes "[a]ny situation where a machine fails to function correctly," including failures caused by corrosion.[48] It is undisputed that the fire was sparked by a mechanical breakdown, so the question is whether damage then caused by the fire is "due and confined to" the mechanical breakdown.

"Many insurers use forms developed by the Insurance Services Office, Inc. (ISO), an organization that provides statistical, actuarial, underwriting, and claims information to the property and casualty insurance industry. The ISO also develops and supplies policy forms. Among these forms are the personal auto insurance

---

[44] Policy, Doc. 12-1 at 26.
[45] *Id.* at 26.
[46] Id. at 29.
[47] *Id.*
[48] *Ready Food Prods. v. Great Northern Ins. Co.*, 612 A.2d 1385, 1387 (Pa. Super. 1992); *see also Am. Graphics, Inc. v. Travelers Indem. Co.*, 17 F.App'x 787, 791 (10th Cir. 2001) (consulting dictionary to determine that the ordinary meaning of "mechanical breakdown" is "a breaking down, wearing out, or sudden loss of ability to function efficiently, as of a machine").

9

policy (PAP)."⁴⁹ The Policy's due-and-confined-to clause appears verbatim in the ISO's PAP,⁵⁰ and identical language has been incorporated into other types of insurance contracts.

While Pennsylvania courts have not weighed in on the meaning of this due-and-confined-to clause, a small body of case law has developed interpreting this language. Considering general principles of Pennsylvania contract interpretation as well as the cases interpreting such due-and-confined-to exclusions, the best reading of the Policy under Pennsylvania law is that it only excludes from coverage damage which is both caused by mechanical breakdown, and confined to the machinery itself because of its breakdown.

Under Pennsylvania law, ⁵¹ "[t]he fundamental rule in contract interpretation is to ascertain the intent of the contracting parties."⁵² "In cases of a written contract, the intent of the parties is the writing itself . . . When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained

---

⁴⁹   6 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 62.01 (2024).
⁵⁰   *Id.* § 62.07.
⁵¹   For a federal court sitting in diversity, the forum state's choice-of-law rules determine which state's substantive law to apply. *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 169–70 (3d Cir. 2005). Pennsylvania choice-of-law doctrine first consults whether the parties have chosen the relevant law. *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999). Here, the Policy lacks a choice of law clause, but references Pennsylvania law multiple times; the Policy is titled "Pennsylvania Auto Policy;" and "the parties appear to implicitly agree that Pennsylvania law applies, given that they cite no other state law in any of their filings." *Price v. Foremost Indus.*, Civil Action No. 17-00145, 2017 U.S. Dist. LEXIS 211555, at *16 (E.D. Pa. 2017). So the Court applies Pennsylvania law.
⁵²   *Ins. Adjustment Bureau, Inc. v. Allstate Inc. Co.*, 905 A.2d 462, 468 (Pa. 2008).

from the document itself."⁵³ "The document is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."⁵⁴

The canon against surplusage reasons that interpretations rendering words in a written instrument pointless should be disfavored.⁵⁵ Here, by using the conjunction "and," the phrase "due and confined to" sets out a conjunctive test: the loss must both be due to mechanical failure and confined to mechanical failure. The ordinary meaning of "due to" is "caused by."⁵⁶ "Confined to" must therefore mean something else if the phrase is to have any meaning. The most natural reading of "confined to" is that the excluded damage must be to the broken machinery itself because of its breakdown.⁵⁷ Reading the Policy as an integrated whole,⁵⁸ this reading of "confined to" also harmonizes the Policy's explicit

---

<sup>53</sup> *Id.*
<sup>54</sup> *Mun. Auth. of Midland v. Ohioville Borough Mun. Auth.*, 108 A.3d 132, 139 (Pa. Commw. Ct. 2015).
<sup>55</sup> ANTONIN SCALIA AND BRIAN GARNER, READING LAW 150 (2014).
<sup>56</sup> *See* DUE TO, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/due%20to ("as a result of: because of"). Although they did not parse out the distinct words of "due to" and "confined to," Pennsylvania courts have interpreted the phrase "due and confined to" in exclusionary policies to not reach situations in which the mechanical failure resulted from some other act, such as a third party's negligence. *See also Pugh v. Bankers Mut. Ins. Co.*, 211 A.2d 135, 140 (Pa. Super. 1965); *Rodella v. Bankers Mut. Ins. Co. of Lancaster*, 70 A.2d 407 (Pa. Super. 1950).
<sup>57</sup> *See* CONFINED, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/confined ("kept within confined: such as . . . limited to a particular location");
<sup>58</sup> *Atl. Richfield Co. v. Razumic*, 390 A.2d 736, 739 (Pa. 1978) ("a writing must be interpreted as a whole, giving effect to all its provisions").

11

coverage of fire-related damage with its comparatively opaque exclusion[59] of damage "due and confined to" mechanical breakdown.[60] Although this "narrower view" represents a "minority" approach to understanding this kind of exclusionary clause,[61] I am persuaded that the decisions reaching this outcome best measure the intent of the parties.[62]

The Supreme Court of Tennessee interpreted this same clause in the leading case of *Lunn v. Indiana Lumbermens Insurance Co.*, holding instead that "due to" refers to actual causation, whereas "confined to" refers to proximate causation.[63] Under this interpretation, "the 'due and confined to' clause excludes damages

---

[59] *See* RESTATEMENT (SECOND) CONTRACTS § 203(c) (1981) ("specific terms and exact terms are given greater weight than general language"); *Zoological Soc'y v. INTECH Constr., Inc.*, 48 Pa. C. & C. 542, 550 (Pa. C.P. May 16, 2000) ("Where specific or exact terms appear to conflict with broader or more general terms, the former is more likely to express the meaning of the parties with respect to the situation than the general language.") (citing *PBS Coal v. Hardhat Mining*, 632 A.2d 903 (Pa. Super. Ct. 1993)).

[60] *See Meeting House Lane v. Melso*, 628 A.2d 854, 857–58 (Pa. Super. Ct. 1993) ("One part of a contract cannot be interpreted so as to annul another part, and a contract must be construed, if possible, to give effect to all of its terms."); *General Am. Transp. Corp. v. Sun Ins. Office*, 369 F.2d 906, 908 (6th Cir. 1966) (citing *Fireman's Fund Ins. Co. v. Hanley*, 252 F.2d 780, 785 (6th Cir. 1958) ("[W]here a policy expressly insures against direct loss and damage by one element but excludes loss or damage caused by another element, the coverage extends to the loss even though the excluded element is a contributory cause.").

[61] 6 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 62.07 (2024).

[62] *See Bezue v. Hartford Acci. & Indem. Co.*, 224 So. 2d 76, 77–78 (La. Ct. App. 1969) (where mechanical failure caused fire in parked car, damage caused by fire was not "confined to" the mechanical failure); *Cobb v. Home & Auto Ins. Co.*, 86 Cal. App. 3d 673, 679 (Cal. Ct. App. 1978); *Air Advantage, Inc. v. Fed. Ins. Co.*, No. 14 CV 5694, 2015 U.S. Dist. LEXIS 202002, at *4–5, *9–10 (N.D. Ill. Jun. 26, 2015) (applying *Cobb's* interpretation of the "due and confined to" exclusion and explaining that damage due and confined to aircraft's catastrophic engine failure would be excluded, but damage due to the resulting emergency landing would not be excluded).

[63] 201 S.W.2d 978, 890 (Tenn. 1949). *See also Home Serv. Casualty Ins. Co. v. Barry*, 277 S.W.2d 280, 285 (Ct. App. Tex. 1955) (applying *Lunn*).

12

which are caused solely by mechanical failure where there is no concurring or intervening cause which is included in the policy."[64]

But "due and confined to" is an "obscure" phrase,[65] rather than an unambiguous, legal term of art incorporated from tort law,[66] so it is unpersuasive to reason that it incorporates these tort law concepts. As the Supreme Court of Connecticut stated, "[t]he situation is not entirely like that present in cases of torts and the like. A person taking out insurance bargains for a certain protection . . . . The usual principles of causation should not be so closely applied as to defeat the intent of the parties."[67] Instead, this phrase should be given its "plain and ordinary meaning,"[68] as this meaning most reliably calculates the intent of the parties.

If any ambiguity remains as to the Policy's "due and confined to" language, that ambiguity also favors O'Connor. Fact discovery is over, and neither party has offered extrinsic evidence relevant to interpreting the Policy. That lack of evidence points the Court towards the principle of *contra proferentum*,[69] which reasons that

---

[64] *NASHUA Corp. v. Federal Ins. Co.*, No. 3258, 1972 U.S. Dist. LEXIS 12698, at *8 (D. N.H. Jul. 19, 1972).

[65] *Terrien v. Pawtucket Mut. Fire Ins. Co.*, 71 A.2d 742, 186 (N.H. 1950).

[66] *Cf. Mellon Bank, N.A. v. Aetna Bus. Credit Inc.*, 619 F.2d 1001, 1013 (3d Cir. 2006) (explaining that as "certain words attain binding definition as legal terms of art," such terms "should be interpreted in accord with their specialized or accepted usage unless such an interpretation would produce irrational results or the contract documents are internally inconsistent").

[67] *Fogarty v. Fidelity & Cas. Co.*, 180 A. 458, 460 (Conn. 1936).

[68] *Mellon Bank*, 619 F.2d at 1013.

[69] *See Burns Mfg. Co. v. Boehm*, 356 A.2d 763, 766 n.3 (Pa. 1976) ("Where a document is found to be ambiguous, inquiry should always be made into the circumstances surrounding the execution of the document in an effort to clarify the meaning that the parties sought to express in the language which they chose . . . It is only when such an inquiry fails to clarify

13

"any ambiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable."[70] Pennsylvania courts have honed in on *contra proferentum*'s application in the insurance policy context, reasoning that: "When a provision in a policy is ambiguous . . . the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage."[71] In every decision this Court could find which applied the *contra proferentum* canon to this "due and confined to" language, the Court reached the same conclusion as to its meaning.[72] So even granting that the Policy's "due and confined to" language is ambiguous, the outcome would be the same.

Finally, I note that given the Policy's explicit coverage of damage caused by fire, several courts applying *Lunn*'s reading of when damage is "due and confined to" "mechanical breakdown" have nevertheless found that the exclusion would cover the plaintiff under similar circumstances.[73] These courts have applied the

---

the ambiguity that the rule of construction . . . should be used to clarify the matter against that party responsible for the ambiguity, the drafter of the document."); *Motor Coils Mfg. Co. v. Am. Ins. Co.*, 454 A.2d 1044, 1050 (Pa. Super. 1982).

[70] *Sun Co. v. Pennsylvania Turnpike Comm'n*, 708 A.2d 875, 878–79 (Commw. Ct. 1998).

[71] *401 Fourth Street, Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005)

[72] *See Bezue*, 224 So. 2d at 77–78; *Cobb*, 86 Cal. App. 3d at 679; *Air Advantage, Inc.*, 2015 U.S. Dist. LEXIS 202002, at *4–5, *9–10 (N.D. Ill. Jun. 26, 2015).

[73] This interpretation is not sound by a strict application of tort law causation principles as the mechanical breakdown would remain the "sole proximate cause" of the fire, meaning that the fire would not be a "concurring" or "intervening" cause of the damage. Instead, this rationale appears to be grounded in the Supreme Court of Connecticut's observation that "[t]he usual principles of causation should not be so closely applied as to defeat the intent of the parties." *Fogarty*, 180 A. at 460.

principle that "where a policy expressly insures against direct loss and damage by one element but excludes loss or damage caused by another element, the coverage extends to the loss even though the excluded element is a contributory cause."[74] In *Fireman's Fund Insurance Co. v. Cramer*, for example, the Supreme Court of Florida opined that "the 'comprehensive coverage' of [a] policy" with the same due-and-confined-to clause "clearly covers losses occasioned by fire . . . If heat caused by the mechanical breakdown of the engine had resulted in damage by fire to other parts of the automobile, such fire damage would doubtless be within the comprehensive coverage."[75]

Damage resulting from the starter's mechanical breakdown and confined to the starter itself is excluded from the Policy, but the fire-related damage to O'Connor's vehicle is not excluded from the Policy, even if it remains undisputed that the mechanical failure sparked the fire. The Court rejects Progressive's proffered interpretation of the Policy and denies summary judgment on this issue.

---

[74] *General Am. Transp. Corp.*, 369 F.2d at 908 (citing *Fireman's Fund Ins. Co.*, 252 F.2d at 785.
[75] 178 So. 2d 581, 582–83 (Fla. 1965); *Harris v. United States Fid. & Guar. Co.*, 409 So. 2d 1210, 1211 (Fla. Ct. App. 1982) (holding that "mechanical failure and damage by an ensuing fire or accident" was not covered by a policy's exclusionary clause for mechanical breakdown). *See also Farmers Mut. Hail Ins. Co. v. Stansbury*, 291 S.W.2d 347, 348 (Tex. Ct. App. 1956) ("[W]here the breakdown or failure is not followed or accompanied by the coming into play of a peril insured against which in turn causes or contributes to a resultant loss; -- the loss and damage resulting from the breakdown or failure is not covered by the policy.").

### 3. Bad Faith

Finally, I note that Progressive moves for summary judgment on O'Connor's bad faith claim. It first argues that "the failure to provide coverage cannot be bad faith where there is no duty to provide coverage."[76] However, Progressive's argument that there is no duty to provide coverage because the damage did not exceed the $1,000 deductible is premature for summary judgment because, as explained above, the resolution of this issue depends on expert testimony. Progressive's related argument that there is no duty to provide coverage because the fire was caused by mechanical breakdown is invalid considering the foregoing analysis of the Policy.  Progressive's related argument is that its denial of coverage was "reasonable."[77] But Progressive provides very little briefing on this issue. In any event, it is difficult to determine whether Progressive's response was reasonable without also ruling on whether O'Connor has created a genuine dispute of fact as to the value of damage to his car. So the Court will deny Progressive's motion for summary judgment on O'Connor's insurance bad faith claims, without prejudice to raise them again following the conclusion of expert discovery.

---

[76]  Brief in Support, Doc. 11 at 5–6 (arguing that there is no duty to provide coverage because the damage did not exceed the $1,000 deductible); Reply Brief, Doc. 17 at 1–2 (arguing that there is no duty to provide coverage because the fire resulted from mechanical breakdown).

[77]  Brief in Support, Doc. 11 at 6–7.

## III. CONCLUSION

The sole issue which is not premature for summary judgment does not compel summary judgment for Progressive. Accordingly, Progressive's motion for summary judgment will be denied, without prejudice to move for summary judgment again regarding the other issues after the completion of expert discovery.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge